IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

LAYTON A. SCHAELLING

  Plaintiff,

v.

NEUSTAR, INC.

  Defendant

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et. seq.*, ("ADA" and "ADAAA") to provide appropriate relief to Plaintiff Layton A. Schaelling. Mr. Schaelling alleges that Defendant Neustar, Inc.("Neustar") discriminated against him, a qualified individual with a disability, when it terminated his employment because of his disability, and/or because of his record of disability, and/or because Neustar regarded him as being disabled.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporate by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the District of Colorado.

3. Plaintiff has complied with all jurisdictional, administrative, and legal prerequisites to filing to this action, and this action has been timely commenced.

## PARTIES

4. Mr. Schaelling is a citizen of the United States and a resident of the State of Colorado.

5. Neustar is a Delaware corporation with principal offices in Virginia.

6. At all relevant times, Neustar had at least 15 employees.

7. At all relevant times, Neustar has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

8. At all relevant times, Neustar has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On July 20, 2018, Mr. Schaelling timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission in Denver, CO, alleging disability discrimination.

10.   On or about April 30, 2019, the EEOC mailed a right to sue letter to Mr. Schaelling.

11.   This action is filed within 90 days of Mr. Schaelling's receipt of the right to sue letter.

## STATEMENT OF CLAIMS

12.   Neustar employed Mr. Schaelling from October 17, 2016 to May 3, 2018.

13.   Mr. Schaelling worked as a sales executive for Neustar in its Security Solutions Division.

14.   Mr. Schaelling's supervisor was Todd Evers, Vice President, North American Security Sales for Neustar. Mr. Evers was based in Chicago.

15.   Mr. Schaelling worked primarily from his home in Colorado Springs, Colorado, and traveled frequently on business to Neustar and client locations.

16.   As a salaried professional, Mr. Schaelling did not have a set work schedule. His job duties generally required him to work during normal business hours, subject to adjustment for communications with other Neustar employees, customers, and potential customers, located throughout the United States in other time zones.

17.   Mr. Schaelling and the other sales employees supervised by Mr. Evers each had an assigned quota (target) for the value of sales of services to clients.

18.   During 2017, none of the employees, including Mr. Schaelling met their quotas.

19. Mr. Schaelling and the other sales employees supervised by Mr. Evers each also had a "pipeline" of identified potential sales opportunities. They were required to regularly update and report details of their pipeline plan to Mr. Evers.

20. Mr. Schaelling's pipeline plan for the last quarter of 2017 and the first quarter of 2018 was the second highest of the sales employees on Mr. Evers' team.

21. On September 12, 2017, Mr. Evers placed Mr. Schaelling on a "performance improvement plan" ("PIP").

22. On approximately the same date, Mr. Evers also placed sales employee Bryant Reyes on a similar PIP.

23. Earlier in 2017, Bryan Reyes had complained to Neustar's human resources (HR) office about Mr. Evers.

24. Mr. Evers told Mr. Schaelling several times that he wanted to find a way let Mr. Reyes go, i.e. separate him from his employment at Neustar.

25. Mr. Evers told Mr. Schaelling that his boss, Denise Hayman (based in San Francisco) had directed Mr. Evers to put Mr. Schaelling on the PIP "so that Bryan Reyes wouldn't think he was being singled out."

26. Mr. Evers explained to Mr. Schaelling that he wanted to avoid the perception that placing Mr. Reyes on a PIP was retaliation for Mr. Reyes' earlier complaint to HR.

27. In an email dated December 1, 2017, Mr. Evers stated that Mr. Schaelling had successfully completed the expectations of the PIP. Mr. Evers also

-5-

stated that over the past 60 days, Mr. Schaelling had closed 5 opportunities totaling $433,000, which led all salespeople in the Security Services division.

28. On January 22, 2018, Mr. Evers provided Mr. Schaelling with his annual job performance evaluation for 2017. Mr. Evers ranked Mr. Schaelling third out of seven sales employees on Mr. Evers' team with regard to his total bookings (sales) attainment. Mr. Schaelling's performance objectives for 2018 included the goal of meeting his quota for 3 out of 4 quarters.

29. In early 2018, Mr. Schaelling recognized that he was drinking to excess. On January 6, 2018, he ceased all alcohol consumption, began regularly attending meetings of Alcoholics Anonymous, and has maintained his sobriety ever since.

30. While Mr. Schaelling was on occasion drinking to excess, he was not intoxicated while attending any work-related meetings or events.

31. Mr. Schaelling's use of alcohol did not directly impact his work, and his performance did not suffer.

32. As a result of Mr. Schaelling's use of alcohol, he suffered from alcohol abuse and alcohol dependence, which are alcohol use disorders.

33. The alcohol use disorders alcohol abuse and alcohol dependence are commonly referred to alcoholism.

34. Individuals who suffer alcohol use disorders or alcoholism are commonly referred to as alcoholics.

35. Because of his alcoholism and consumption of alcohol, as compared to a member of the general public, Mr. Schaelling was substantially more limited in his ability to care for himself, to concentrate, and to think.

36. Mr. Schaelling's alcoholism is a mental/physical impairment that substantially limits his major life activities of caring for himself, concentrating, and thinking. Accordingly, his alcoholism is a disability as defined by the Americans with Disabilities Act.

37. Additionally, and as set forth below, Neustar perceived that Mr. Schaelling suffered from a disability and believed that he was substantially limited in those major life activities. Accordingly, Neustar regarded Mr. Schaelling as having a disability.

38. Mr. Schaelling also has a record of having a disability.

39. Mr. Schaelling was fully qualified for, and could perform all of the essential functions of the subject position without any accommodation.

40. On February 21, 2018, Mr. Schaelling disclosed his alcoholism to Mr. Evers. He told Mr. Evers that he had realized he had become addicted to alcohol and had ceased all alcohol consumption.

41. At all times during his employment with Neustar, Mr. Schaelling was never disciplined or counseled regarding his alcohol consumption.

42. On Tuesday, March 13, 2018, Mr. Schaelling and Mr. Evers met in person and discussed Mr. Schaelling's alcoholism in detail. On that date, Mr. Schaelling asked Mr. Evers if he needed to look for another job, to which Mr. Evers replied "no".

43.     Mr. Evers asked Mr. Schaelling about his prior alcohol use, including how much he drank and his drinking habits. Mr. Evers then shared concerns about his own alcohol use, and stated that he was trying to cut down himself because he knew it was causing issues in his life and that his father was an alcoholic.

44.     Mr. Evers stated several times that he would never have known about Mr. Schaelling's alcoholism if Mr. Schaelling had not disclosed it to him, because he never noticed it affecting Mr. Schaelling's performance or any job-related activities.

45.     On Monday, March 19, 2018, Mr. Evers told Mr. Schaelling "it's time for you to go." Mr. Evers did not explain this decision or the change from his statement just six days earlier.

46.     Mr. Schaelling asked Mr. Evers whether Neustar would offer him any severance benefit. Mr. Evers replied that his boss, Ms. Hayman, had wanted to terminate Mr. Schaelling immediately, but that he had gotten her to agree to permit Mr. Schaelling to continue for another six weeks. Mr. Evers also again stated "You hid it well, I would never have known."

47.     About one week later, Mr. Evers expressed to Mr. Schaelling that he could not ever trust Mr. Schaelling again because he asserted that Mr. Schaelling had been lying to him for over 6 months about his alcoholism. Mr. Schaelling asked if Mr. Evers was firing him because of his drinking, and Mr. Evers responded that he would not answer that. At no time during this discussion did Mr. Evers make any statement that the termination was due to Mr. Schaelling's unsatisfactory job performance.

48. Thereafter, Mr. Schaelling continued performing his job duties without any interruption, and transferred accounts to other managers as directed.

49. Between the end of March 2018 and the termination of his employment, Mr. Schaelling successfully closed two sales deals. For this achievement, Mr. Schaelling was publicly congratulated by Neustar's Chief Revenue Officer.

50. Also during this period, Mr. Schaelling won a sales contest, for which he was publicly congratulated by Ms. Hayman, and awarded a $2,000 bonus for his performance.

51. Neustar falsely asserts that it terminated Mr. Schaelling's employment because of his alleged failure to meet sales goals/performance objectives.

52. Neustar did not terminate other similarly situated sales employees who did not have a disability, and who failed to meet sales goals/performance objectives.

53. On June 8, 2018, undersigned counsel sent a letter to Neustar's General Counsel regarding Mr. Schaelling's claims. Within that letter, Mr. Schaelling demanded a copy of his Neustar personnel file, pursuant to Colorado's employee personnel file access law, C.R.S. § 8-2-129.

54. On July 13, 2018, outside counsel for Neustar replied to the substance of the letter. However, Neustar never provided a copy Mr. Schaelling's personnel file.

### FIRST CLAIM FOR RELIEF – DISABILITY DISCRIMINATION

55. Plaintiff realleges all prior paragraphs and incorporates them herein.

56. Plaintiff has exhausted his administrative remedies under the Americans with Disabilities Act.

57. Plaintiff has a disability, has a record of a disability, or was regarded by Defendant as having a disability.

58. Defendant terminated Plaintiff because Plaintiff had a disability, had a record of a disability, or Defendant regarded Plaintiff as having a disability.

59. Defendant's acts and omissions violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12112.

60. Plaintiff suffered pecuniary and non-pecuniary damages as a result of Defendant's unlawful conduct.

<u>SECOND CLAIM FOR RELIEF – PERSONNEL FILE ACCESS</u>

61. Plaintiff realleges all prior paragraphs and incorporates them herein.

62. Pursuant to C.R.S. § 8-2-129, Plaintiff was entitled to make one inspection of his Neustar employee personnel file after the termination of his employment.

63. Plaintiff requested his Neustar employee personnel file.

64. Neustar did not provide Plaintiff with a copy of, or an opportunity to inspect, his employee personnel file.

65. Although the statute does not create or authorize a private right of action for violation of its requirements, Plaintiff prays for an order requiring Neustar to comply with the statute.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Layton A. Schaelling respectfully requests the Court enter judgment in his favor and against Neustar, and Order the following relief:

(a) Back pay, benefits, and other economic losses;

(b) Compensation for all past and future pecuniary losses resulting from Neustar's unlawful discrimination;

(d) Compensation for all past and future non-pecuniary losses resulting from Neustar's unlawful discrimination, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

(e) Nominal damages;

(f) Injunctive and declaratory relief;

(g) Prejudgment and post-judgment interest at the highest statutory rate;

(h) Attorney and expert witness fees, and costs as allowed by law;

(i) All other legal and equitable relief allowable by law or as justice requires.

## JURY DEMAND

Plaintiff requests a jury trial for all issues triable by jury.

Respectfully submitted this 18th day of June, 2019.

*/s/ Gary M. Kramer*
Gary Kramer Law, LLC
1465 Kelly Johnson Blvd, Suite 210
Colorado Springs, CO 80920
Phone: (719) 694-2783
gary@garykramerlaw.com
**Attorney for Plaintiff Layton Schaelling**

Plaintiff's address:
11499 Rill Pt
Colorado Springs, CO 80921